## AFFIDAVIT OF SPECIAL AGENT DEBRA L. LaPREVOTTE

DEBRA L. LaPREVOTTE, being duly sworn, deposes and states as follows:

### INTRODUCTION

1. I am a Special Agent employed by the Federal Bureau of Investigation (FBI). I have been so employed for nine (9) years. Currently, I am assigned to the Asset Forfeiture/ Money Laundering Squad in the FBI's Washington, D.C., Field Division (Northern Virginia Resident Agency). My investigative assignments include investigating the asset forfeiture aspects of suspected violations of the federal money laundering statutes, Title 18, United States Code, Sections 1956 and 1957, as well as violations of Title 18, United States Code, Sections 1341, mail fraud, 1343, wire fraud, 1344, Bank fraud, and 1347, health care fraud. I have received extensive training in Advanced Money Laundering Techniques and Complex Financial Manipulation.

2. I am currently assisting SA John Bevington and SA Jimmy Pope, FBI, Washington Field Office. SAs Bevington and Pope are assigned to work drug trafficking offenses.

3. Unless otherwise stated the information in this affidavit is either personally known by me or was provided to me by other law enforcement officers, a review of various documents or records, and witness interviews as described herein..

4. This affidavit is in support of seizure warrants for the following bank accounts:

    a. all funds and other things of value in Bank of America account #1920643711, in the name of Pedro Julio Prandy.

    b. all funds and other things of value in BB&T Bank account #5150987913, in the name of Pedro Julio Prandy.

    c. all funds and other things of value in Montgomery County Teachers Federal Credit Union account #19493, in the name of Pedro Julio Prandy.

## BACKGROUND INFORMATION

5. Pedro Julio Prandy has been identified by the FBI as a major supplier of cocaine and her to the Raven Darnell Carroll drug trafficking organization which was dismantled in November of 2003. Carroll was the head of a local organization that distributed multi-kilogram weights of heroin and cocaine per month on the streets of the Washington, D.C. metropolitan area. Wiretaps were conducted of this organization from November 2002 to March 2003. Carroll's organization was traced back to the Dominican Republic, Puerto Rico, and Venezuela; and arrests were made in each of those countries. The probable cause illustrated in this affidavit is derived from several sources, including the wiretap investigation, physical surveillance, the testimony of a cooperating witness and controlled purchases of narcotics made from Prandy.

6. Pedro Julio Prandy has maintained several aliases over the years, including: aka Pedro Brandy, aka Pedro Julio Prandy-Binett and aka Pedro Julio Binett-Prandy. Prandy was born on March 31, 1962 and maintains the following social security number: 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. His FBI number is 995068MA9. Prandy has the following arrest record:

| Date | Charge |
|---|---|
| 05/23/1991 | Distribution of Heroin/Cocaine, convicted, Crim. No. 91-342 (D.D.C.) |
| 10/31/1994 | Conspiracy to Possess Cocaine with Intent to Distribute |
| 6/23/2005 | Arrested, Distribution of Cocaine, pending GJ |

7. As mentioned above, Prandy was identified as a source of supply to Raven Darnell Carroll during the wiretap investigation conducted from November 2002 to March 2003. During the course of that wiretap investigation, Prandy was intercepted on several occasions discussing the sale of

cocaine and heroin to Raven Darnell Carroll (hereinafter Carroll). Carroll was murdered outside of his stash house, 430 Condon Terrace, SE, Washington, D.C. on March 8, 2003. In addition to the conversations recorded in the wiretap, information provided by a cooperating witness revealed that Prandy began dealing with one of Carroll's co-conspirators after Carroll's death.

8. SA Pope and SA Bevington knew from their training, experience, and the testimony of a Cooperating Witness in this case, that Carroll and his co-conspirators referred to money as "paperwork" An example of these intercepts and information obtained from surveillance of Prandy is provided below:

### January 12, 2003

9. On January 12, 2003, at approximately 1:55 p.m, Prandy told Carroll to bring the "paperwork" with him when they meet. Carroll called Prandy again at 5:14 p.m., and 5:26 p.m. to postpone their meeting until 6:00 p.m. and 6:30 p.m. respectively. Carroll asked Prandy if he had any information, and Prandy said that they would hear from them on Tuesday (January 14, 2003). They agreed to talk further when they met in person.

### January 14, 2003

12. On January 14, 2003, Carroll called Prandy at approximately 3:34 p.m., at the phone number subscribed to in Prandy's name, (202) 345-1377, and requested that they meet at 6:00 p.m. Carroll called Prandy back at 5:09 p.m. and had a conversation in code with Prandy regarding Carroll returning drugs to Prandy when they meet later that night. Carroll asked if he needed to bring the other equipment back. Prandy referred to the "equipment" as "boxes that are sealed" and replied that Carroll should bring them. They also agreed to change their meeting time to 8:00 p.m. Carroll called Prandy at 7:23 p.m., and Carroll and Prandy agreed to change their meeting time until 8:30

p.m. at Carroll's request. Based upon the experience and training, and on the testimony of a Cooperating Witness in this case, SA Pope knew that in this conversation Prandy and Carroll were talking in code about Carroll returning kilograms of cocaine, referred to as "sealed boxes," to Prandy. This is a practice often encountered among persons trafficking in significant quantities of narcotics when they are dissatisfied with the weight or quality of a particular quantity of drugs.

13. Prandy drove a white pickup truck bearing Maryland license plates 60J-923 to 1361 U Street, NW and parked in the alley behind Webb's Fish and Ribs at approximately 8:22 p.m. This vehicle is also registered to Manders Decorating, 9141 Brookville Road, Silver Spring, Maryland. Carroll arrived and parked in the alley with Prandy at 9:05 p.m. Carroll was driving his Toyota Avalon bearing Washington, D.C. dealer's license plates D-7470. Both Carroll and Prandy departed the alley in their respective vehicles at 9:23 p.m. Prandy drove his white pickup truck to 620 Sheridan Street, parked his vehicle and entered building "620" at 9:40 p.m. Prandy carried a white paper bag into the building.

14. Carroll called Prandy at approximately 10:59 p.m. and they had a discussion regarding money that Carroll had just provided to Prandy, in addition to the returned drugs. Prandy made reference to a number that he just faxed to Carroll and stated that was what it was in the paperwork. SA Pope believed that Prandy was complaining that Carroll had not provided him enough money. Carroll said that one of those stacks had two in it. Prandy said that there was a lot of loose ones and single ones. Prandy then began to act as though he discovered more money and that possibly Carroll was correct. Prandy said he would fax him again. Carroll called Prandy back at 11:04 p.m., and told Prandy that he had put the paperwork together funny. SA Pope believes that Carroll had bundled the money in such a manner that Prandy initially thought that Carroll had not given him their agreed

4

amount, and that Carroll was stating that he had packaged it differently. SA Pope, SA Bevington andyour affiant knows that drug dealers often bundle their money in such a fashion as to make it easier to count. For example, SA Pope has participated in controlled purchases of narcotics with the participation of Cooperating Witnesses. These CW's typically require that the FBI bundle the money in stacks of one thousand dollars. They explain that drug dealers keep their money stored in such a manner so that it can be counted and retrieved quickly (*e.g.* 10 stacks equal $10,000).

15. There were more conversations recorded between Carroll and Prandy during the course of the wiretap investigation, and there were surveillances corroborating the two of them meeting. For the sake of brevity, your affiant chose to illustrate the actions of these two individuals using recorded conversations and surveillance from January 12, 2003, and January 14, 2003. Based upon their experience in this and other wiretap narcotics investigations Agents Pope and Bevington believe that the conversations between Carroll and Prandy establish that, at a minimum, Prandy sold approximately 10 kilograms of cocaine to Carroll valued at over $200,000.00. The wire interceptions further indicate that Prandy was also supplying heroin to Carroll and during the period of that the wiretap was in place, Prandy sold at lest one kilogram of heroin to Carroll, valued at approximately $60,000.00

## Cooperating Witness (CW)

16. Raven Darnell Carroll was murdered outside of his stash house, 430 Condon Terrace, SE, Washington, D.C. during the night of March 8, 2003. Carroll had a partner named Walter Charles Webb who sold drugs for Carroll, recruited new customers, and sold drugs to some of his own customers. Webb owned and operated the restaurant adjacent to the alley where Carroll and Prandy would meet for their drug transactions. Webb knew Prandy, and knew about the drug dealing

relationship between Carroll and Prandy. However, Webb did not buy drugs from Prandy when Carroll was alive. Webb and Prandy conducted a few drug transactions at some point after Carroll's death, but their relationship did not prosper as much as Carroll's and Prandy's. Webb made purchases of heroin from Prandy, but was not happy with the quality and refused to pay for them.

17. Webb was arrested on November 12, 2003, during the takedown of the wiretap investigation in this case as discussed in above. Webb pled guilty to his charges on March 5, 2004 and agreed to cooperate with the government to include testifying in court if necessary.

18. Webb identified Prandy as a large scale supplier of heroin and cocaine to the Raven Carroll drug trafficking organization, in which Webb was a participant. Webb identified a photograph of Prandy, gave an accurate physical description of him, and stated that they referred to him as "the painter, " "the paint man," and "Pepe." Webb was able to accurately describe the vehicles that Prandy drove to meet with Carroll. Webb advised that he knew that Carroll received narcotics from Prandy for four years prior to Carroll's death in March, 2003. During that four year period, Webb knows that Prandy provided Carroll with 50 to 60 kilograms of cocaine. As a result, Prandy received at least one million dollars in drug payments for the drugs that he suppled to Carroll alone. Webb also knows that Prandy provided heroin to Carroll on 10 to 12 occasions in amounts of at least 500 grams which has an approximate value of $300,000.00. Webb purchased heroin from Prandy on several occasions.

19. During the month of April of 2004, Webb placed consensually monitored calls to Prandy and met with Prandy on April 14, 2004. Webb wore a recording device when he met with Prandy near the intersection of 14th Street. and U Street, NW. Prandy drove a gray colored Honda Element bearing Maryland license plates M999997, which is registered to Pedro Julio Binnett-Prandy, 1713

Lansdowne Way, Silver Spring, MD 20910. The video recording of that meeting discloses that Prandy told Webb about his drug trafficking history with Carroll, and said that he sold Carroll as much as 5 kilograms of cocaine a week on some occasions. In addition, Prandy admitted selling both cocaine and heroin to Carroll. Prandy informed Webb that his current prices are $24,000.00 for a kilogram of cocaine and $72 per gram for heroin. They agreed to meet in the future.

20. Webb maintained telephonic contact with Prandy periodically during the summer and fall of 2004. In those conversations Prandy informed Webb that he was having a problem with his suppliers and could not provide drugs to him at that time.

## November 30, 2004

21. On November 30, 2004, Walter Webb met with Pedro Prandy in the alley near the intersection of 14th Street, and U Street, NW, Washington, D.C., where Prandy provided him with a sample of powder cocaine. The sample of cocaine provided to Webb by Prandy was sent to the Mid-Atlantic Regional Laboratory where it was subjected to quantitative and qualitative analysis. A qualified forensic chemist has verified that the sample was comprised of 4.8 grams of 55% pure cocaine hydrochloride (powder cocaine). This meeting occurred in an FBI camera car and was recorded by a hidden video camera. Prandy did not charge Webb for the cocaine, but was offering it as a sample so that Webb could ascertain the quality of the cocaine to see if he wanted to purchase more.

## December 3, 2004

22. On December 3, 2004, Walter Webb met with Pedro Prandy in the alley near the intersection of 14th Street, and U Street, NW, Washington, D.C., where Prandy provided Webb with 1/4 kilogram of powder cocaine. Webb provided Prandy with $6000 in pre-recorded FBI funds. The

7

transaction occurred inside of a FBI camera car and was recorded by a hidden video camera. The cocaine sold to Webb by Prandy was sent to the Mid-Atlantic Regional Laboratory where it was subjected to quantitative and qualitative analysis. A qualified forensic chemist has verified that it was 246.0 grams of 55% pure cocaine hydrochloride (powder cocaine).

### December 14, 2004

23. On December 14, 2004, Pedro Prandy met with Walter Webb again in the alley near the intersection of 14th Street and U Street, NW, Washington, D.C. During that meeting, Prandy provided a sample of heroin to Webb, and again did not charge him for it. The meeting occurred in a FBI camera car and was recorded by a hidden video camera. The sample of heroin provided to Webb by Prandy was sent to the Mid-Atlantic Regional Laboratory where it was subjected to quantitative and qualitative analysis. A qualified forensic chemist has verified that it was 1.4 grams of 10% pure heroin.

### June 1, 2005

25. SA Pope met with a Cooperating Witness and placed a call to Prandy for the purpose of arranging a purchase of powder cocaine. Prandy told the CW in code that he would have something soon.

26. On June 23, 2005, agents of the FBI executed a search warrant at 620 Sheridan Street, Apartment 417, Hyattsville, Maryland 20783, Prandy's stash house. During that search, agents seized one solid "brick" of white power with an approximate weight of one (1) kilogram, several significant quantities of white powder amounting to between 300 and 400 grams, and more than $30,000.00 in cash. The white powder substance and the brick tested positive for cocaine. The premises is rented in Prandy's name and has been since 2002, even though Prandy resides with his

wife at 1713 Lansdowne Way, Silver Spring, MD. In the opinion of experienced narcotics investigators including Agent Bevington, the premises at 620 Sheridan Street is a "stash" location whose principal function is to house and facilitate Prandy's illegal narcotics trafficking affairs.

27. On June 23, 2005, Pedro Julio Prandy was arrested by the FBI and an additional $10,000 cash was seized from his possession. He is currently charged by complaint in Criminal No. 05-362M with distribution of a controlled substance in violation of 21 United States Code §§ 841(a)(1) and 841(b)(1)(C).

28. Your affiant is aware that Prandy is currently unemployed and has been for the past year. Further, your affiant has not been able to identify any additional sources of income for Prandy.

### Bank Accounts

29. During the execution of the search at 620 Sheridan Street, Apartment 417, FBI agents located bank information which indicated that Pedro Prandy had bank accounts at Bank of America (account #1920643711), BB&T Bank (account #51509879130 and at Montgomery County Teachers (MCT) Federal Credit Union (account #19493)

30. Subsequent investigation revealed that Prandy had been at the Bank of America branch, located in Hyattsville, Maryland on the morning of June 23, 2005, prior to his arrest and had withdrawn $7,000 from the bank. There is probable cause to believe that these funds made up a portion of the $10,000 that was seized from Prandy.

31. Your affiant reviewed the several financial documents located during the search of Prandy's stash house. These documents include random bank statements from Bank of America, BB&T Bank and MCT Federal Credit Union. One bank statement, dated December 2004, for the Bank of America account #1920643711, revealed several deposits for even amounts of $300, $200,

$250, $580 and $270. Your affiant knows that individuals who deal in drug trafficking deal in cash. Investigation indicates that during the time frame, Prandy was unemployed. Your affiant observed one deposit ticket for the MCT Federal Credit Union from 2003 which indicated a cash deposit of $800.

32. Along with these items, your affiant observed Western Union wire transfer receipts indicating that between 1998 and 2000, Prandy wired in excess of $10,000 to Guatemala. Another set of money orders indicated that on February 3, 2004,, Prandy purchased $11,800 in money orders.

## CONCLUSION

33. Based on the information contained in this affidavit, there is probable cause to believe that Pedro Julio Prandy has been engaged in committing the following offenses: possession with intent to distribute and distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1); conspiracy to commit such offenses in violation of Title 21, United States Code, Section 846; the use of communication facilities to aid the commission of the above offenses involving controlled substances, in violation of Title 21, United States Code, Section 843(b); and the Interstate Travel in Aid of Racketeering activity, that is, trafficking in controlled substances, in violation of Title 18, United States Code, Section 1952. Moreover, this investigation has revealed that the defendant has been committing the above offenses on a continuous basis for the past several years. In addition, investigation reveals that Prandy has been unemployed for, at least the past eight months; and has no apparent, current means of legitimate income. Accordingly, there is probable cause to believe that funds currently on deposits in the bank accounts listed below are the proceeds of Prandy's drug trafficking and are therefore subject to seizure and forfeiture pursuant to Title 21,

U.S.C. section 881 (a)(6).

Wherefore I respectfully request that seizure warrants be obtained for the following items

    a. all funds and other things of value in Bank of America account #1920643711, in the name of Pedro Julio Prandy.

    b. all funds and other things of value in BB&T Bank account #5150987913, in the name of Pedro Julio Prandy.

    c. all funds and other things of value in Montgomery County Teachers Federal Credit Union account #19493, in the name of Pedro Julio Prandy.

_____
Debra LaPrevotte, Special Agent, FBI

Sworn to and subscribed before me on this_____day of June, 2005.

JUN 2 4 2005

_____
United States Magistrate Judge

JOHN M. FACCIOLA
U.S. MAGISTRATE JUDGE

11